IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

DARRELL MCCLANAHAN,       )
                                     )
        Plaintiff,          )
                                     )
        v.                 )     Case No. 23-05076-CV-SW-JAM
                                     )
ANTI-DEFAMATION LEAGUE,    )
JONATHAN GREENBLATT, and THREE   )
JOHN/JANE DOE DEFENDANTS,    )
                                     )
        Defendants.       )

## <u>ORDER</u>

Before the Court is Defendant Anti-Defamation League's ("ADL") Motion to Dismiss for Failure to State a Claim (Doc. 10) and Defendant Jonathon Greenblatt's Motion to Dismiss for Lack of Personal Jurisdiction, Insufficient Service of Process, and Failure to State a Claim (Doc. 12). Plaintiff's Complaint attempts to assert claims for defamation/libel, invasion of privacy, and election interference. (Doc. 1-2) For the reasons set forth below, Defendants' Motions are granted.

## I.    BACKGROUND

On September 22, 2023, this action was removed from the Circuit Court of Vernon County, Missouri, to the Western District of Missouri. (Doc. 1) Plaintiff, a recent political candidate in Missouri, initiated this lawsuit contesting an article entitled "ADL Researchers Identify Failed Extremist Candidates in Missouri and North Carolina," that was published on ADL's website on August 16, 2022. (*See* Docs. 1-2, 11-2) Plaintiff's allegations of defamation primarily revolve

1

around the article's portrayal of Plaintiff. (Doc. 1-2) For example, Plaintiff alleges that the article falsely identified him as a "member of the Knight's party, Ku Klux Klan" (Doc. 1-2, p. 5[1] ¶ 10(a)), falsely labeled him as a "White Supremacist, Sore Loser, Angry American" (Doc. 1-2, p. 5 ¶ 11), and falsely stated that his social media posts contain "anti-Semitic, anti-government, white supremacist, and bigoted content" (Doc. 1-2, p. 5 ¶ 9(a)). The Complaint (Doc. 1-2) further asserts other statements in the article are false and defamatory, including:

- The assertion that Plaintiff "did not openly express or share [his] extreme views during the primaries or in candidate forums." (Doc. 1-2, p. 6 ¶ 12)

- The statement that Plaintiff's candidacy serves as a "stark reminder that extremists, some of whom may purposefully hide their extremist beliefs, continue to seek public office with the hope of influencing mainstream society." (Doc. 1-2, p. 7 ¶ 19)

- That the article "attacks McClanahan's Honorary membership to the League of the South without investigating if McClanahan believed in Southern secession or a White dominated South." (Doc. 1-2, p. 7 ¶ 23)

Plaintiff also seeks to assert a claim for invasion of privacy based on the article's use of a photograph of Plaintiff that he had posted on social media. (Doc. 1-2, p. 8 ¶ 25) The Complaint further identifies "election interference," because Plaintiff states he was a candidate for office at the time the article was published. (Doc. 1-2, p. 9 ¶ 31) Plaintiff also alleges damages he has suffered as a result of the article, stating the ADL published the statements at issue "with actual or

---

[1]The page number reflects the pagination affixed in ECF, not the handwritten number at the bottom.

constructive knowledge that they were false and with reckless disregard or [sic] whether they were false." (Doc. 1-2, p. 9 ¶ 30) Plaintiff seeks $150,000 in compensatory damages, $5 million in punitive damages, and an injunction requiring ADL to remove the article from the internet. (Doc. 1-2, p. 10)

On September 29, 2023, Defendant ADL filed a motion to dismiss for failure to state a claim, along with suggestions in support. (Docs. 10, 11) Defendant Greenblatt also filed a motion to dismiss, citing lack of jurisdiction, insufficient service of process and failure to state a claim, along with corresponding suggestions in support. (Docs. 12, 13) On October 10, 2023, Plaintiff filed suggestions in opposition to both Defendants' motions to dismiss. (Docs. 17, 17-1) Subsequently, on October 23, 2023, Defendants submitted reply suggestions addressing the arguments raised in Plaintiff's suggestions in opposition. (Doc. 21) On October 24, 2023, and without leave of Court, Plaintiff filed suggestions in support of his response to both Defendants' motions to dismiss. (Docs. 22, 23)

## II.     ANALYSIS

### A.  Failure to State a Claim Under Federal Rule of Civil Procedure 12(b)(6)

When considering a Rule 12(b)(6) motion to dismiss, the Court looks "to the facts alleged in the complaint and construe[s] those facts in the light most favorable to the plaintiff." *Riley v. St. Louis County of Mo.*, 153 F.3d 627, 629 (8th Cir. 1998) (citation omitted). In doing so, the Court will "accept as true all of the factual allegations contained in the complaint and review the complaint to determine whether its allegations show that the pleader is entitled to relief." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (citing *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 554-55 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions… ." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted).

A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). "In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded, … to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). "Though *pro se* complaints are to be construed liberally…they still must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "[L]iberal construction does not require a court to conjure allegations on a litigant's behalf." *Rickmyer v. Browne*, 995 F. Supp. 2d 989, 1027 (D. Minn. 2014) (internal quotations and citations omitted). Likewise, "a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Morgan Distrib. Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989).

Though matters outside the pleadings may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleadings. *Enervations, Inc. v. Minn. Min. & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004). If matters outside the pleadings "are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). In general, materials

4

embraced by the complaint include "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings." *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (quotation omitted). Stated more comprehensively:

> While courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned" without converting the motion into one for summary judgment.

*Miller v. Redwood Toxicology Lab, Inc*., 688 F.3d 928, 931 n.3 (8th Cir. 2012). Here, it is proper for the Court to analyze the article published by ADL, as the Complaint necessarily embraces the article. *Enervations, Inc.,* 380 F.3d at 1069. Plaintiff expressly references the article in his Complaint (Doc. 1-2, ¶¶ 2, 10, 12, 19, 20, 25, 31) and relies on it throughout as the basis for his allegations against Defendants (Doc. 1-2, ¶¶ 3, 8, 9, 11, 14, 15, 16, 17, 18, 21, 23, 24, 26, 27, 28, 29, 30).

Plaintiff argues that Defendants' motions to dismiss for failure to state a claim should be converted into summary judgment motions because they "include affidavits not part of the Court record." (Doc. 17-1, p. 7) However, the initial affidavit is an attorney declaration that serves to authenticate the article itself. (Doc. 11-1) While Plaintiff did not attach the actual article to the Complaint, as explained above, it is properly presented to and considered by the Court at this juncture. The second affidavit, submitted by Defendant Greenblatt to support his jurisdictional motion, is also properly considered by the Court in the context of a motion to dismiss. *See Dever*

5

*v. Hentzen Coatings, Inc*., 380 F.3d 1070, 1072 (8th Cir. 2004) (noting the necessity of testing a complaint's assertion of personal jurisdiction through the examination of affidavits and exhibits submitted with the motions to dismiss and in response to them).   Therefore, Defendants' motions are properly considered as motions to dismiss.

Plaintiff further contends that dismissing the case at this stage would be premature, citing the early phase of the case with no discovery, document production, or other proceedings.   (Doc. 17-1, p. 7)   However, Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a complaint at the outset if the plaintiff has failed to state a claim.   Moreover, in civil cases generally, a party is not entitled to discovery before an action is brought—a party may not seek discovery until after she or he has not only filed a complaint, but a well-pleaded one.   *See Ashcroft*, 556 U.S. at 686 ("the doors of discovery" do not unlock "for a plaintiff armed with nothing more than conclusions," so if a complaint does not "state[ ] a plausible claim for relief," the plaintiff "is not entitled to discovery"); *Chudasama v. Mazda Motor Corp*., 123 F.3d 1353, 1367 (11th Cir. 1997) (There is no "need for discovery" before "the filing of a well-pleaded complaint, [discovery] is not a device to enable the plaintiff to make a case when his complaint has failed to state a claim." (quoting *Kaylor v. Fields*, 661 F.2d 1177, 1184 (8th Cir. 1981) omitted)); *see also Application of Eisenberg*, 654 F.2d 1107, 1112 (5th Cir. 1981) ("A person contemplating litigation has no absolute entitlement to early discovery ...").   Thus, dismissal of the case at this stage of the proceedings, if warranted, is not premature.

6

### 1. Plaintiff Fails to State Claim for Defamation Against ADL

Under Missouri law, the elements of defamation are (1) publication of a defamatory statement that identifies the plaintiff, (2) that is false, (3) that is published with the requisite degree of fault, and (4) that damages the plaintiff's reputation. *Overcast v. Billings Mut. Ins*., 11 S.W.3d 62, 70 (Mo. 2000). In determining whether a plaintiff can survive a motion to dismiss a defamation claim for failure to state a cause of action, the Court engages in a two-step analysis. *Castle Rock Remodeling, LLC v. Better Bus. Bureau of Greater St. Louis, Inc*., 354 S.W.3d 234, 239 (Mo. Ct. App. 2011). The first step is to "determine whether a statement is capable of defamatory meaning." *Henry v. Halliburton*, 690 S.W.2d 775, 779 (Mo. 1985). Defamatory meaning is a meaning that "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Id*. Then, if it is determined that the statements in question are capable of such defamatory meaning, the second step is to "determine whether a defense, such as privilege, shields the defendant from legal action." *Turntine v. Peterson*, 959 F.3d 873, 882 (8th Cir. 2020) (citing *Overcast*, 11 S.W.3d at 70).

Under Missouri Law, there are three types of defenses a defamation defendant may assert: (1) truth, which "may always be asserted as an absolute defense"; (2) absolute privilege, such as statements made during judicial proceedings; and (3) conditional or qualified privilege. *Halliburton*, 690 S.W.2d. at 780. The First Amendment also gives rise to the the absolute privilege accorded statements of opinion, which even if made maliciously or insincerely, do not give rise to a defamation cause of action. *Pape v. Reither*, 918 S.W.2d 376, 380 (Mo. Ct. App.

1996). Thus, the United States Supreme Court has held there can be no liability under state defamation law for statements of opinion. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974).

In *Gertz*, the Supreme Court stated: "Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Id.* Following *Gertz*, Missouri adopted an absolute privilege for expressions of opinion, broadly holding that any alleged defamatory statements that "can be characterized as 'opinions,'" are "subject to the First Amendment absolute privilege." *Halliburton*, 690 S.W.2d at 787.

In *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990), the Supreme Court clarified that *Gertz* was not "intended to create a wholesale defamation exemption for anything that might be labeled 'opinion'" because expressions of "opinion" may, in fact, "often imply an assertion of objective fact." *Milkovich* did not wholly abandon the constitutional protection for an "opinion." Indeed, a statement labeled as an "opinion" can be the basis of an actionable defamation claim if the alleged "opinion" statement implies an assertion of objective facts. *Milkovich*, 497 U.S. at 18. Accordingly, some statements about matters of public concern may not be protected "opinion" even if so labeled. *Id.* This does not mean, however, that all statements of opinion are actionable. *Id.* at 19.

To be liable under state defamation law, opinion statements about matters of public concern "must be provable as false." *Id.* If opinion statements are not provable as false, these statements are still protected. *Id.* Three years after *Milkovich*, in *Nazeri v. Missouri Valley Coll.*, 860 S.W.2d 303, 314 (Mo. 1993), the Missouri Supreme Court recognized *Milkovich's* rejection of an

8

absolute privilege for "anything that might be labeled 'opinion.'" The Court further adopted the *Milkovich* "test" to determine whether a statement is actionable, holding that "[t]he test to be applied to an ostensible 'opinion' is whether a reasonable factfinder could conclude that the statement implies an assertion of objective fact." *Id*.

Additionally, in any defamation case, the truth is an absolute defense to a defamation claim. *Rice v. Hodapp*, 919 S.W.2d 240, 243–44 (Mo. banc 1996). Thus, for the purposes of defamation, it does not matter whether a statement was made in bad faith, so long as it was true. *Nigro v. St. Joseph Med. Ctr.*, 371 S.W.3d 808, 818 (Mo. Ct. App. 2012). The test is whether the challenged statement is substantially true, it is not necessary that the precise facts disclosed be literally true. *Id*. Slight inaccuracies are immaterial if the allegedly defamatory charge is true in substance. *Id*.; *see also Cockram v. Genesco, Inc*., 680 F.3d 1046, 1051 (8th Cir. 2012) (applying Missouri's "substantial truth" standard to an employer's written statements about a former employee). "A person is not bound to exact accuracy in his statements about another, if the statements are essentially true." *Thurston v. Ballinger*, 884 S.W.2d 22, 26–27 (Mo. Ct. App. 1994) (applying the "substantial truth" standard, but finding that the defendant's oral statements were not substantially true). A substantially true statement contains the same "sting" as the truth, which means that the plaintiff's damage would have been the same irrespective of whether the defendant stated the truth or the substantial truth. *St. Joseph Med. Ctr.*, 371 S.W.3d at 818.

Here, Plaintiff's Complaint fails to state a claim for defamation. Each of the statements alleged to be defamatory by Plaintiff are nonactionable for various reasons. These reasons include being expressions of opinion, being substantially true according to Plaintiff's own

9

assertions in the Complaint, failing to correspond accurately with the content of the article, and reflecting Plaintiff's own words.

### (i) Non-Actionable Opinions

Plaintiff's central contention is that the article defamed him by characterizing his social media presence and views as antisemitic, white supremacist, anti-government, and bigoted. (Doc. 1-2, p. 5 ¶ 9(a)). However, these are opinions and, as such, do not establish a valid basis for a defamation claim. Whether someone or their expressions are deemed antisemitic, white supremacist, anti-government, or bigoted is a matter of individual interpretation—making such statements nonactionable opinions. *See, e.g.*, *Nelsen v. S. Poverty L. Ctr.,* No. 4:18-00895-CV-RK, 2019 WL 12288374, at *4 (W.D. Mo. July 31, 2019) (statements that plaintiff was a neo-Nazi, anti-immigrant and racist "are subjective characterizations that are not objectively verifiable"); *see also Beverly Hills Foodland v. United Food & Com. Workers Union, Local 655*, 39 F.3d 191, 196 (8th Cir. 1994) (holding that the terms "unfair" and "facist" were non-actionable opinions*); Starks v. TULA Life, Inc.,* No. 8:23-CV-4, 2023 WL 4763829, at *4 (D. Neb. July 26, 2023) (holding that "calling an individual a 'racist' or characterizing a person's statements as being 'racist' or 'hateful,' standing alone, is not 'capable of proof or disproof'" and collecting cases from around the country).

Plaintiff also contests two assertions in the article related to his political campaign. First, that he "did not openly express or share [his] extreme views during the primaries or in candidate forums," (Doc. 1-2, p. 6 ¶ 12); and second, that "[w]hile unsuccessful, [his] candidac[y is] a stark reminder that extremists, some of whom may purposefully hide their extremist beliefs, continue to

10

seek public office with the hope of influencing mainstream society[.]" (Doc 1-2, p. 7 ¶ 19) These statements are also expressions of opinion. Determining whether a candidate has openly expressed extreme views involves subjective judgments that lack verifiable truth, encompassing interpretations of what qualifies as "extreme" and whether such views have been shared openly. Similarly, the broad statement in the article regarding extremists' aspirations to impact mainstream society is an expression of opinion and also a remark applicable to extremists in general. (Doc. 11-2, p. 2) These statements of opinion are not legally actionable.

### (ii) Statements that Substantially Align with the Truth

The Complaint itself reflects that Plaintiff holds the views ascribed to him by the ADL article, that is the characterization of his social media presence and views as antisemitic, white supremacist, anti-government, and bigoted. (Doc. 1-2, p. 5 ¶ 9(a)) In the initial paragraph of the Complaint, Plaintiff identifies himself as a "Pro-White man." (Doc. 1-2, p. 4 ¶ 1 ) Plaintiff also identifies himself as being an "honorary member" of at least two organizations: the Knight's Party Ku Klux Klan (KKK) and the League of the South. (Doc. 1-2, pp. 5 ¶ 10(a), 7 ¶ 23) The ADL-published article includes an image of Plaintiff standing in front of a burning cross alongside an individual in KKK regalia. (Doc. 11-2, p. 4) Both are seen giving the stiff-arm Nazi salute, accompanied by a caption that reads, "McClanahan with Knights Party leaders Thomas and Jason Robb at a cross-burning circa 2019." (Doc. 11-2, p. 4) Plaintiff also admits in the Complaint "ADL's COE attacks McClanahan's Honorary membership to the League of the South… ." (Doc. 1-2, p. 7 ¶ 23)

In his Complaint, Plaintiff acknowledges attending a private religious Christian Identity

11

Cross lighting ceremony in 2019. (Doc. 1-2, p. 7 ¶ 21) Additionally, Plaintiff's Complaint reflects that he wrote an article for the KKK group's newsletter from a "Pro-White perspective denouncing Anti-Whiteism [sic]". (Doc. 1-2, p. 7 ¶ 22) Regarding his anti-government beliefs, Plaintiff concedes using the pseudonym "Gordon Kahl" on social media, explaining that it pays homage to an anti-government figure. (Doc. 1-2, p. 8 ¶ 24) Given the Complaint allegations are authored by Plaintiff himself, these statements substantially align with the truth, and thus, are unactionable.

### (iii) *Statements that do not Appear in the Article*

Plaintiff takes issue with the article's portrayal of his affiliations with two groups—the Knight's Party and the League of the South. Although he argues that he "is not and never has been" a member of the Knight's Party, Ku Klux Klan (Doc. 1-2, p. 5 ¶ 10(a)), the article asserts that he has "attended events organized by" the group and does not label him as a member. (Doc. 11-2, p. 2) Similarly, regarding the League of the South, Plaintiff contends that the article defamed him by suggesting he advocated for Southern secession and the establishment of a white-dominated independent territory (Doc. 1-2, p. 7 ¶ 23), however, the article only states that the League of the South supports these ideas and identifies that Plaintiff posted an image of his membership card online. (Doc. 11-2, p. 3) Plaintiff also asserts that the article "deceptively" associated him with another political candidate, Joseph A. Gibson III. (Doc. 1-2, p. 9 ¶ 29) However, the article does not explicitly state or imply that Plaintiff is a member of the same neo-Nazi group as Gibson. (Doc. 11-2) The article instead indicates that both individuals are "extremists" who experienced defeat in primary elections, without suggesting any other

12

connection between the two. (Doc. 11-2) Thus, these statements are non-actionable, as they do not appear in the article.

### (iv) *Statements that Reflect Plaintiff's Own Words*

Plaintiff also protests the article's characterization of him as a "Sore Loser" and "Angry American". (Doc. 1-2, pp. 5 ¶ 11, 8 ¶ 26 ) However, Plaintiff concedes that these quotes are from his August 2022 Facebook post announcing his write-in campaign for the U.S. House of Representatives. (Doc. 1-2, pp. 5 ¶ 11) Regardless of whether the post referred to himself or to Missouri's "sore loser" election law, the article accurately quotes Plaintiff's own words. (Doc. 11-2) Consequently, this statement is not actionable. *See, e.g. Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991) ("A doctored quotation may defame a person by attributing untrue factual assertions to the speaker or by suggesting a manner of speaking or a personal trait the speaker does not hold."); *Thomas v. Pearl*, 998 F.2d 447, 452 (7th Cir. 1993) ("A party's accurate quoting of another's statement cannot defame the speaker's reputation since the speaker is himself responsible for whatever harm the words might cause."). Thus, these statements are non-actionable, as they reflect Plaintiff's own words.

### (v) *The Complaint Mispleads the Correct Standard of Fault*

When a plaintiff in a defamation suit is a public figure, he or she must allege and prove with "convincing clarity" that the defamatory statement was made by a defendant with "actual malice." *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 270, (1971); *New York Times Co. v. Sullivan*, 376 U.S. 254, 285–86, (1964). Under Missouri law, "actual malice," means that the statements were made with knowledge that they were false or with reckless disregard for whether they were

13

true or false at a time when defendant had serious doubts as to whether they were true.  *Rockwood*

*Bank v. Gaia*, 170 F.3d 833 (8th Cir. 1999).  *New York Times Co. v. Sullivan*, requires that when

a public figure is involved in a defamation suit, a finding of defamation must be supported by clear

and convincing proof that a libelous falsehood was made with actual malice, that is with knowledge

that it was false or with reckless disregard of whether it was false or not at a time when defendant

had serious doubt as to whether it was true.  376 U.S. at 284.  Plaintiff is considered a public

figure at the time the article was published because he was running for public office.  *See Brown*

*v. Herald Co*., 698 F.2d 949, 951 (8th Cir. 1983); (Doc. 1-2, p. 9 ¶ 31).[2]

Plaintiff seems to present two distinct theories regarding actual malice.  Initially, Plaintiff

suggests that ADL engaged in actual malice by "trolling [him]" through "misquoting him out of

context."  (Doc. 1-2, p. 5 ¶ 11 )  This position conflates "actual malice," which pertains to a

defendant's subjective awareness of falsity, with "common law malice," which concerns a

defendant's hostility towards a plaintiff.  *Bugg v. VanHooser Holsen & Eftink PC*, 152 S.W.3d

373, 377 (Mo. Ct. App. 2005).  Second, Plaintiff asserts that ADL exhibited actual malice by

"pursuing a preconceived storyline without taking proper care in [its] investigation,"  (Doc. 1-2,

p. 9 ¶ 31(1))  However, allegations of "failure to investigate" are insufficient to establish actual

malice.  *Gertz v. Robert Welch, Inc*., 418 U.S. 323, 332 (1974) ("[M]ere proof of failure to

investigate, without more, cannot establish reckless disregard for the truth.").  Similarly,

Plaintiff's assertion that ADL published the article with a "preconceived storyline" does not suffice

---

[2]Plaintiff does not contest this public figure status.  (*See., e.g*., Doc. 17-1, p. 3, Doc. 23, p. 3)

to demonstrate actual malice as a matter of law. *Tah v. Glob. Witness Publ'g, Inc*., 991 F.3d 231, 241 (D.C. Cir. 2021) ("preconceived notions or suspicions usually do little to show actual malice" because "virtually any work of investigative journalism begins with some measure of suspicion"). Plaintiff cannot rely on general assertions and must plead facts to support a finding of actual malice. *Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp*., 951 F.3d 952, 958 (8th Cir. 2020). Plaintiff has not successfully made any allegations that ADL published the article with actual malice, thus, Plaintiff's Complaint also fails to state a claim for defamation on this basis.

**2. Plaintiff Fails to State a Claim for Invasion of Privacy**

Missouri law recognizes four separate causes of action for the tort of invasion of privacy: (1) an unreasonable intrusion on the plaintiff's seclusion or private affairs; (2) appropriation of plaintiff's name or likeness for defendant's advantage; (3) public disclosure of embarrassing private facts; and (4) publicity that unreasonably places another in a false light before the public. *Nemani v. St. Louis Univ*., 33 S.W.3d 184, 185 (Mo. 2000). Not all uses of another's name are tortious. *Id*. "It is the plaintiff's name as a symbol of … identity that is involved here, and not … as a mere name*." Haith v. Model Cities Health Corp. of Kansas City*, 704 S.W.2d 684, 687 (Mo. Ct. App. 1986) (citing William L. Prosser, "Privacy," 48 Cal.L.Rev. 383 (1960)). Name appropriation occurs where a defendant "makes use of the name to pirate the plaintiff's identity for some advantage." *Id*.

The Complaint references that ADL invaded Plaintiff's privacy by appropriating a photo of Plaintiff with the caption "White Power." (Doc. 1-2, p. 8 ¶ 25) The article published by ADL contains a screenshot of a post that was uploaded to the social media site Vkontakte by Plaintiff

15

with a caption added by ADL stating, "McClanahan pictured in 2021 VKontakte post." (Doc. 11-2, p. 5) The caption affixed to the photo by Plaintiff includes the words "White Power." (Doc. 11-2, p. 5) As the Complaint does not address what cause of action the invasion of privacy assertion is based on, the Court will address each cause of action in turn.

As for the intrusion tort, Plaintiff does not allege that ADL acquired any private information about him through unreasonable intrusion Additionally, because ADL simply reproduced a post he had publicly shared on a social media platform accessible to the public, Plaintiff cannot assert that ADL invaded his privacy. *St. Anthony's Med. Ctr. v. H. S. H.*, 974 S.W.2d 606, 609-10 (Mo. Ct. App. 1998). Second, ADL did not appropriate Plaintiff's name or likeness since the use of the post was an article and not for advertising or any other advantage. *See Doe v. TCI Cablevision*, 110 S.W.3d 363, 368-69 (Mo. 2003). The article does not constitute the publication of private facts, as there was nothing private about Plaintiff's activities on a publicly-accessible social media platform. *See St. Anthony's Med. Ctr.,* 974 S.W.2d at 608. Third, the public statements made by a candidate for public office are considered legitimate matters of public concern. *Langworthy v. Pulitzer Publ'g Co*., 368 S.W.2d 385, 389-90 (Mo. 1963). Finally, the publication of Plaintiff's post does not give rise to a false light claim because it did not attribute any false statement or belief to Plaintiff. *Smith*, 519 S.W.3d at 803. Thus, Plaintiff fails to state a claim for invasion of privacy.

### 3. Plaintiff Fails to State a Claim for Election Interference

Regarding Plaintiff's assertion of "election interference," this cause of action is not recognized under Missouri law. Moreover, the basis of Plaintiff's attempted assertion of this

16

claim relies on the allegation that ADL misrepresented Plaintiff's August 6 Facebook conversation concerning Missouri's Sore Loser law.  (Doc. 1-2, p. 9 ¶ 31)  As a result, it duplicates the defamation claims made by Plaintiff and is unsuccessful for identical reasons.  Recovery for untrue statements that cause injury to reputation are properly characterized as defamation. *Nazeri*, 860 S.W.2d at 317.  A claim for false light invasion of privacy is properly dismissed if recovery should be in defamation.  *Cf. Vitti v. Vockrodt*, No. 16-CV-00236-FJG, 2016 WL 4487884, at *8 (W.D. Mo. Aug. 24, 2016) (noting the Missouri Supreme Court has held that "[r]ecovery for untrue statements should be in defamation" and dismissing duplicative claims). For these reasons, Plaintiff fails to state a claim for election interference.

### 4. Plaintiff Fails to State Claims for Defamation, Invasion of Privacy and Election Interference Against Defendant Greenblatt[3]

There are no factual allegations against Defendant Greenblatt except for the information that he and ADL have offices in New York City and are U.S. citizens.  (Doc 1-2, p. 4 ¶ 4(b)) This singular reference to Defendant Greenblatt, apart from the caption, constitutes the entirety of the Complaint's content concerning Defendant Greenblatt and this fatal deficiency itself warrants the dismissal of this action against him.  *See Bell Paper Box, Inc. v. U.S. Kids, Inc*., 22 F.3d 816, 818 (8th Cir. 1994).   The Complaint is void of any factual allegation linking Defendant Greenblatt to the article or any basis to hold him liable for alleged defamatory statements or any

---

[3]Defendant Greenblatt adopts and incorporates the statement of facts contained in Defendant ADL's Suggestions in Support of Motion to Dismiss, filed on September 29, 2023, seeking dismissal for failure to state a claim pursuant to Rule 12(b)(6).  (Doc. 13)

other tort. Consequently, Plaintiff has failed to articulate a valid claim against Defendant Greenblatt. *See e.g., Ashcroft*, 556 U.S. 662, at 678-79; *see also* Fed. R. Civ. P. 8(a) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]"). Thus, Plaintiff fails to state claims for defamation, invasion of privacy and election interference against Defendant Greenblatt.

**B.** **Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(2) and (5)**

Defendant Greenblatt further moves this Court for an order dismissing Plaintiff's Complaint against him for lack of personal jurisdiction and insufficient service of process. (Doc. 12) As a threshold matter, Plaintiff effectively concedes this through inference, stating he "may or may not have named individuals that were oblivious to his writings" and that "even when dismissing a defendant…for not having liability, does not in any way negate… the liability created by the ADL of which Plaintiff has brought suit against that corporate entity itself… ." (*See* Doc. 17, p. 2 ¶ 6; 17-1, p. 5; Doc. 22, p. 3; Doc. 23, p. 5)

Plaintiff's response also contains arguments that Defendants have included affidavits that are not part of the court record, and that Defendant Greenblatt's motion is premature, as discovery is needed so Plaintiff can identify the author and graphic illustrator of the article. (*See* Doc. 17-1, ¶¶ 1-3, 11)[4] However, as discussed *supra* at pp. 5-6, these arguments are unavailing. Nevertheless, the Court will analyze personal jurisdiction and service of process regarding Defendant Greenblatt below.

---

[4]For the same reasons Plaintiff's claims can't be maintained against ADL, any such claims against others connected to the article similarly would not survive.

1. **The Court lacks Personal Jurisdiction Over Defendant Greenblatt**

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts "to support a reasonable inference that the defendant[ ] can be subjected to jurisdiction within the state." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004) (original brackets and internal quotation marks omitted); *accord Digi–Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996). Although "[t]he evidentiary showing required at the prima facie stage is minimal," *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) (internal quotation marks omitted), the "showing must be tested, not by the pleadings alone, but by the affidavits and exhibits" supporting or opposing the motion. *Dever*, 380 F.3d at 1072 (internal quotation marks omitted). The Court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in plaintiff's favor in deciding whether the plaintiff made the requisite showing. *Digi–Tel*, 89 F.3d at 522.

Personal jurisdiction in a diversity case such as this exists "only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." *Dever*, 380 F.3d at 1073 (internal quotation marks omitted). "Missouri's long-arm statute authorizes personal jurisdiction over defendants who, inter alia, transact business ... within the state." *Viasystems, Inc. v. EBM– Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011) (citing Mo. Rev. Stat. § 506.500.1). In adopting the long-arm statute, the Missouri legislature "intended to provide for jurisdiction, within the specific categories enumerated in the statutes [e.g., transacting business or making a contract within the state,] to the full extent permitted by the due process clause." *State*

19

*ex rel. Metal Serv. Ctr. of Ga., Inc.v. Gaertner*, 677 S.W.2d 325, 327 (Mo. banc 1984).

Due process requires that the defendant purposefully establish "minimum contacts" in the forum state such that asserting personal jurisdiction and maintaining the lawsuit against the defendant does not offend "traditional conceptions of fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464, 474–477 (1985) (brackets and internal quotation marks omitted). The defendant must have engaged in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id*. at 475 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). This purposeful-availment requirement is met where the "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id*. at 474 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)).

The Complaint lacks any allegations that would establish minimum contacts and thus create personal jurisdiction over Defendant Greenblatt in this Court. The Complaint does not allege that Defendant Greenblatt had any contact with Missouri or any involvement with the article whatsoever. Defendant Greenblatt's accompanying declaration indicates that he has no connections to Missouri: Defendant Greenblatt does not possess real or personal property in Missouri, has never registered to vote in Missouri, has never paid taxes in Missouri, and has never obtained a Missouri driver's license. (Doc. 13-1, p. 1) Additionally, he has not visited Missouri for any purpose related to the article in question. (Doc. 13-1, p. 1) The Complaint does not allege that Defendant Greenblatt had any contact with Missouri or any involvement with the article

20

whatsoever.   As the Complaint lacks any factual assertions that would establish personal jurisdiction over Defendant Greenblatt, and Defendant's declaration solidifies the lack of the same, the Court can not exercise personal jurisdiction over Defendant Greenblatt.

Moreover, regarding due process, the Eighth Circuit has established five factors that must be considered in determining whether sufficient minimum contacts exist for personal jurisdiction: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of [the forum state] in providing a forum for its residents; and (5) the convenience or inconvenience to the parties." *Johnson*, 614 F.3d at 794.   Although "the first three factors are primary factors, and the remaining two are secondary factors," the Court will look at all of the factors and the totality of the circumstances in deciding whether personal jurisdiction exists.   *Id*.   Here, analysis of the five factors shows that there is no personal jurisdiction over Defendant Greenblatt.   Based on the primary factors, Defendant Greenblatt lacks any connections to Missouri related to the lawsuit, which weighs significantly against jurisdiction.   In this instance, the less significant fourth and fifth factors balance each other out – while Missouri has an interest in providing a legal forum for its residents, such a forum would be inconvenient for Defendant Greenblatt.   *See Morningside Church, Inc. v. Rutledge*, 9 F.4th 615, 621 (8th Cir. 2021).   As the Complaint is void of allegations that would establish minimum contacts and thus create personal jurisdiction of this Court over Defendant Greenblatt, the case against him is dismissed for lack of personal jurisdiction.

21

## 2. Defendant Greenblatt Has Not Been Properly Served

Other than Rule 12(b)(5), Defendant Greenblatt cites no legal or factual authority in support of his argument that he has not been properly served. Federal Rule of Civil Procedure 12(b)(5) allows a court to dismiss an action for failure to effect proper service as required in Federal Rule of Civil Procedure 4 because "[i]f a defendant is improperly served, a federal court lacks jurisdiction over the defendant." *Printed Media Servs., Inc. v. Solna Web, Inc.*, 11 F.3d 838, 843 (8th Cir.1993). "[T]he party on whose behalf service of process is made has the burden of establishing its validity when challenged...." *Advanced Lipodissolve Centers, LLC v. Karkkainen*, No. 406-CV-199 CAS, 2006 WL 3803764, at *1 (E.D. Mo. Nov. 6, 2006).

In order to initiate a civil lawsuit in federal court, a plaintiff files a complaint with a district court, which must then be served on the defendants. *See* Fed. R. Civ. P. 3, 4(b). Under Rule 4, individuals may be served by: (1) following state law for service in a state court where the district court is located (in this case, Missouri); (2) personally serving the defendant; (3) leaving a copy of the summons and the complaint at the individual's dwelling house or usual place of abode; or (4) delivering a copy of the summons and complaint to an authorized agent. Fed. R. Civ. P. 4(e)(1)–(2); *accord* Mo. S. Ct. Rule 54.13(b)(1). Although Defendant Greenblatt did not submit affidavits or evidence in support of his 12(b)(5) assertion, Plaintiff has not addressed this argument, therefore, it is conceded. *Jasperson v. Purolator Courier Corp.,* 765 F.2d 736, 740 (8th Cir. 1985) ("A party's failure to raise or discuss an issue in his brief is to be deemed an abandonment of that issue."). Thus, the Complaint is also dismissed against Defendant Greenblatt due to insufficient service of process.

22

### III. CONCLUSION

Based on the above, the Court finds Plaintiff has not sufficiently alleged a claim against either Anti-Defamation League or Mr. Greenblatt. This Court also lacks the authority to exercise personal jurisdiction over Mr. Greenblatt and Plaintiff did not properly serve him. It is therefore

**ORDERED** that Defendant ADL's motion to dismiss (Doc. 10) is granted with prejudice. It is further

**ORDERED** that Defendant Greenblatt's motion to dismiss (Doc. 12) is granted with prejudice.

_/s/ Jill A. Morris_
JILL A. MORRIS
UNITED STATES MAGISTRATE JUDGE

23